Aaron W. Baker, OSB No. 922220
Email: aaron@awbakerlaw.com
Serena L. Liss, OSB No. 154799
Email: serena@awbakerlaw.com
BAKER LAW PC
One SW Columbia, Suite 1850
Portland, OR 97204
Phone: 503/ 234-8800
Fax: 503/ 525-0650

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **RANGER GLENZER**,<br><br>                    Plaintiff,<br><br>    v.<br><br>**WHITE BIRD CLINIC,**<br><br>                    Defendant. | Case No.   6:22-cv-00746<br><br>COMPLAINT<br><br>Unlawful Employment Practices<br><br>(Title VII, ORS 659A.030)<br><br>**DEMAND FOR JURY TRIAL** |

**Nature of the Action**

1.

Plaintiff brings this action for monetary relief, damages, costs, punitive damages, attorney fees, and injunctive relief for himself to redress injuries done to him by Defendant or officers, employees, or agents of said Defendant in contravention of his federally protected rights in violation of the Title VII of the

COMPLAINT - 1

Civil Rights Act of 1964, and his state protected rights in violation of Oregon anti-discrimination and anti-retaliation laws including ORS 659A.030.

## Jurisdictional Allegations

2.

The court has jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. § 2000 *et seq.*, 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over Plaintiff's state claims pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

3.

Venue is proper within the District of Oregon, Portland Division, pursuant to 28 U.S.C. § 1391(b) because all or substantially all the events or omissions giving rise to the claims arose in this judicial district.

## General Factual Allegations

4.

Defendant was and is at all material times herein mentioned a nonprofit corporation incorporated in Oregon, with its principal place of business in Eugene, Oregon.

5.

Defendant transacted business, including but not limited to hiring and employing Plaintiff, in Eugene, Oregon.

6.

Plaintiff was and is a resident of Oregon at all material times herein unless otherwise so stated.

7.

At all material times herein, Plaintiff was supervised by Defendant's employees or agents and Plaintiff relied on the actual or apparent authority of Defendant's employees, supervisors, and management for Defendant.

///

///

COMPLAINT - 2

8.

Defendant discriminated against Plaintiff by engaging in and/or allowing a continuing course of conduct, including but not limited to, discrimination and harassment due to Plaintiff's sex, gender, and/or sexual orientation, and retaliated against Plaintiff for reporting and opposing said harassment and discrimination.

9.

Plaintiff is a transgender man who uses the pronouns he, him, and his. During the beginning of Plaintiff's employment, Plaintiff identified as a lesbian. In or about early-to-mid-2019, Plaintiff verbally informed members of his team that his name is Ranger and he uses he, him, and his pronouns. Plaintiff also followed up with an email to his team regarding the changes to his name and pronouns.

10.

Defendant hired Plaintiff in or about September of 2018 as a crisis worker. Plaintiff was well-qualified for the position. Prior to working for Defendant, Plaintiff had over six years of experience in search and rescue, body recovery, and first aid/wilderness first aid training. Plaintiff also has two bachelor's degrees from the University of Oregon, which allowed him to work with a forensic anthropologist in active missing person and homicide cases. Additionally, Plaintiff has taken relevant pre-med classes, including chemistry, biology, anatomy, and physiology. Plaintiff worked hard for Defendant.

11.

Defendant maintains a culture of discrimination and harassment on the basis of sex, gender, and/or sexual orientation. Specifically, white, straight cis men are allowed to engage in a pattern of discrimination and harassment with nominal or no consequences. Defendant displays a pattern of failing to take corrective action in response to reports and/or complaints about white, straight cis males engaging in discriminatory and/or harassing conduct.

///
///

12.

Beginning in or about 2018, Plaintiff was subjected to severe and/or pervasive discriminatory comments and actions based on his sex, gender, and/or sexual orientation including but not limited to the following:

a. Ned White asked Plaintiff if he is "gay or straight, or totally gay" or words to that effect.

b. Mr. White asked Plaintiff if he "sometimes slept with men" or words to that effect.

c. After a haircut, Mr. White told Plaintiff that he "looked like a 12-year-old boy" or words to that effect.

d. Mr. White asked Plaintiff if he "takes it up the ass" or words to that effect.

e. Plaintiff and female employees were treated differently from white, straight cis male employees. For example, when Plaintiff would raise concerns, give opinions, or engage in crisis planning, Defendant would downplay, disregard, or second-guess Plaintiff's ideas and statements, despite Plaintiff's prior experience and knowledge. Conversely, Defendant was more likely to recognize and accept ideas and issues raised by straight cis male employees, even when those employees had less experience or knowledge related to the issues.

f. Employees of Defendant used the terms "fag" and/or "fags."

g. Plaintiff's coworker, Christian Hawkes, threatened to hurt Plaintiff if Plaintiff ever "hurt" Mr. Hawkes's friend with whom Plaintiff was in a relationship at the time.

h. Mr. Hawkes told Plaintiff that to be a "real man," Plaintiff had to "draw penises on everything and make penis jokes" or words to that effect.

i. Mr. Hawkes would make jokes about Plaintiff being a "real man now" or words to that effect.

j. Plaintiff's coworker, Dan Feltz, could be verbally aggressive toward Plaintiff and would disregard and/or oppose Plaintiff's plans and ideas even though Plaintiff had more experience than Mr. Feltz. Conversely, Mr. Feltz was open to direction and ideas from white cis male employees on the team. Based on Mr. Feltz's comments and actions, Plaintiff understood that Mr. Feltz was not comfortable with Plaintiff's sex, gender, and/or sexual orientation.

k. On one occasion, Mr. Feltz disagreed with Plaintiff's plan for approaching an issue with a difficult client. Instead of moving forward with Plaintiff's plan, Mr. Feltz approached the client with his own plan. The client resisted and angrily left. In response, Mr. Feltz slammed his medic pack down, threw items into the pack, and flung the door open to the restaurant as he stormed out to the van. Plaintiff felt obligated to apologize to the bystanders in the restaurant. When Plaintiff arrived at the van, Mr. Feltz began yelling at Plaintiff and attempted to argue with Plaintiff. Plaintiff responded that he would not engage in the argument. Mr. Feltz then threw the laptop on the ground between Mr. Feltz and Plaintiff, flung his seatbelt off, and got out of the van and walked off. When Mr. Feltz returned, Plaintiff stated that he no longer wanted to engage with Mr. Feltz. Plaintiff was forced to work the remainder of his shift with Mr. Feltz.

l. On another occasion, Mr. Feltz disagreed with Plaintiff on a medical call for a client who was having chest pains. Ordinarily, when there is a disagreement on how to handle a serious medical issue, Defendant's protocol is to call the medic on duty working in the Crisis Assistance Helping Out on The Streets ("CAHOOTS") van. At that time, the medic on duty in the CAHOOTS van was Sara Stroo, who is female. Instead of calling her, Mr. Feltz called Brenton (last name unknown), a white cis male medic, who was not on duty and had been drinking alcohol

        earlier that evening. Plaintiff, on the other hand, called Ms. Stroo, who agreed with Plaintiff that because the van does not have the equipment to handle cardiovascular issues, the client could not be transported, which Plaintiff understood was Defendant's protocol. Mr. Feltz and Brenton told Plaintiff he was being "petty" and "stupid" with his concerns, or words to that effect. Mr. Feltz then called the medical director, another cis male, who told Plaintiff that he needed to transport the client and that Plaintiff needed to figure out how to communicate more effectively with his partner. Plaintiff felt uncomfortable transporting the client and reported this incident to Defendant's administration and to the medical team. To Plaintiff's knowledge, nothing was done to address Plaintiff's concerns.

    m.    Mr. Feltz and Mr. White would misgender Plaintiff.

13.

In or about 2018, Plaintiff became aware that Mr. White self-reported that he "might have said some problematic things" or words to that effect to Teresa Bordeaux, who served as mentor for both Plaintiff and Mr. White. Ms. Bordeaux suggested that Plaintiff have a conversation with Mr. White about why his comments were improper. Defendant's CAHOOTS administration team also recommended Plaintiff instruct Mr. White on why the comments he made were inappropriate. Plaintiff declined as Plaintiff was not comfortable explaining to a coworker why his comments constituted sexual harassment and homophobia. Plaintiff requested he no longer be scheduled to train with Mr. White. Plaintiff understands Defendant took no action to address the hostile work environment and the harassment continued.

14.

    Various members of Plaintiff's coworkers and/or team members heard, saw, and/or otherwise knew about the discrimination and hostile work environment Plaintiff endured during his employment with Defendant.

15.

In or about late 2018 or early 2019, Plaintiff asked to no longer work with Mr. Feltz going forward. Defendant agreed but did nothing to accommodate Plaintiff's request. Instead, Plaintiff had to ask coworkers to switch shifts so Plaintiff would not be forced to work with Mr. Feltz.

16.

Defendant has no management hierarchy. This structure makes it difficult for employees to navigate to whom they should report issues and/or make complaints. Additionally, during Plaintiff's employment, it was common for Defendant to fail to follow through with remedial measures or addressing personnel issues. For example, Plaintiff understands that at some point, Defendant decided Mr. Feltz was not to train new employees. However, shortly thereafter, Mr. Feltz was scheduled with trainees. Furthermore, Defendant would attempt to resolve personnel issues, including discrimination and harassment, in a conversational matter, which often meant that reports and/or complaints were not private and employees who were being harassed were placed in the uncomfortable situation of addressing their harassers face-to-face.

17.

Plaintiff sought support from his coworkers after hostile and/or harassing interactions with various other coworkers. Often, given Defendant's structure, Plaintiff was forced to raise concerns with employees who were socially, intimately, or professionally partnered with the harassers. Some members of the team would minimize Plaintiff's experience, ask Plaintiff why the comments bothered him, and/or would tell him he is overreacting or to "let it go" or words to that effect.

18.

In or about June of 2020, during her exit interview, Ruby Joy reported that she had witnessed "a male teammate pulling out his penis during a van shift after [she] made it clear this behavior would be a severe breach of ethics" and that she

heard "the word 'fag' being repeated on shift [more than twenty] times." Plaintiff understands the male employee who exposed his penis was Brenton.

19.

In or about September of 2020, Plaintiff complained about the harassing conduct and comments from Mr. White, Mr. Feltz, and Mr. Hawkes. In response, Human Resources Department (hereinafter "HR") representative, Phoenix, created a three-person committee to investigate Plaintiff's complaints. Additionally, Defendant informed Plaintiff he would not have to work with either Mr. Feltz or Mr. Hawkes. Despite these assurances, Plaintiff was required to continue to interact with both Mr. Feltz and Mr. Hawkes.

20.

In or about October of 2020, Mr. Feltz confronted Plaintiff during a "switch over." During the confrontation, Mr. Feltz was aggressive and intimidating. Mr. Feltz also threw keys at Plaintiff, which hit Plaintiff in the chest.

21.

On or about October 2, 2020, Plaintiff reported that he continues to feel unsafe around Mr. White and Mr. Hawkes and feels anxiety around Mr. Feltz. Furthermore, Plaintiff reported that going to work caused trauma and anxiety and he requested a no contact order with Mr. Feltz, Mr. White, and Mr. Hawkes and to minimize scheduling overlap with them. Plaintiff reported he thought Defendant's training on gender issues was inadequate and requested training specific to transgender issues.

22.

On or about October 7, 2020, Kim Freuen sent an email to Plaintiff reporting that the alleged harassers had not been placed on leave and that Defendant was researching transgender-specific trainings for Mr. White and Mr. Hawkes.

23.

Based on Defendant's failure to take adequate remedial action during the entirety of Plaintiff's employment with Defendant, Plaintiff understood he would be

required to continue to work in the hostile work environment and that the hostile workplace would not improve. Therefore, Plaintiff had no reasonable alternative but to end his employment with Defendant. He submitted a two-week notice on or about October 13, 2020.

24.

On or about October 16, 2020, Plaintiff reported to Defendant that Mr. Feltz had broken the no contact order when he went onto shift early.

25.

In or about November of 2020, Defendant reached out to Transponder, which would conduct a training for Defendant that Mr. White and Mr. Hawkes could attend. Plaintiff's coworker, Katie Haney, witnessed Mr. White and Mr. Hawkes mocking the training they received as "punishment" for their inappropriate behavior. This incident was reported to HR.

26.

Plaintiff filed a Complaint with the Bureau of Labor and Industries ("BOLI") on or about February 22, 2021, which in turn filed the Complaint with the Equal Employment Opportunity Commission ("EEOC"). BOLI found substantial evidence and issued a Notice of Right to File a Civil Suit on or about February 22, 2022. This Complaint has been filed within the prescribed deadline.

## First Claim for Relief
## Title VII – Sex Discrimination

27.

Plaintiff realleges paragraphs 1 through 26.

28.

Defendant discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to constructively discharging Plaintiff, on the basis of his sex, gender, and/or sexual orientation in violation of Title VII.

///

///

29.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of benefits including medical insurance, loss of prestige, and/or loss of future job opportunities in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

30.

As a direct and proximate result of Defendant's conduct Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial.

31.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

32.

Plaintiff is entitled to recover his costs and attorney fees pursuant to 42 U.S.C. § 1988 and Title VII.

33.

Plaintiff seeks equitable relief including an injunction enjoining Defendants from engaging in any employment practice which constitutes unlawful discrimination and/or retaliation under federal law.

## Second Claim for Relief
## ORS 659A.030 – Sex Discrimination

34.

Plaintiff realleges paragraphs 1 through 33.

///

///

35.

Defendant discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to constructively discharging Plaintiff, on the basis of his sex, gender, and/or sexual orientation in violation of ORS 659A.030.

36.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of benefits including medical insurance, loss of prestige, and/or loss of future job opportunities in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

37.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial.

38.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's state protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

39.

Plaintiff is entitled to recover his costs and attorney fees pursuant to ORS 659A.885 and ORS 20.107.

40.

Plaintiff seeks equitable relief including an injunction enjoining Defendants from engaging in any employment practice which constitutes unlawful discrimination and/or retaliation under state law.

///
///

## Third Claim for Relief
## Title VII – Hostile Work Environment

41.

Plaintiff realleges paragraphs 1 through 40.

42.

Defendant's conduct had the purpose and effect of creating an intimidating, hostile, and offensive work environment, and had the purpose and effect of unreasonably interfering with Plaintiff's work performance, and otherwise adversely affected his employment opportunities.

43.

Plaintiff realleges his damages as stated in paragraphs 29 through 33 above.

## Fourth Claim for Relief
## ORS 659A.030 – Hostile Work Environment

44.

Plaintiff realleges paragraphs 1 through 43.

45.

Defendant's conduct had the purpose and effect of creating an intimidating, hostile, and offensive work environment, and had the purpose and effect of unreasonably interfering with Plaintiff's work performance, and otherwise adversely affected his employment opportunities.

46.

Plaintiff realleges his damages as stated in paragraphs 36 through 40 above.

## Fifth Claim for Relief
## Title VII – Retaliation

47.

Plaintiff realleges paragraphs 1 through 46.

///

48.

Defendant discriminated against Plaintiff in the terms and conditions of his employment in substantial motivating part due to Plaintiff's good faith reporting and/or opposition to unlawful employment practices which violated Title VII.

49.

Plaintiff realleges his damages as stated in paragraphs 29 through 33 above.

### Sixth Claim for Relief

### ORS 659A.030 – Retaliation

50.

Plaintiff realleges paragraphs 1 through 49.

51.

Defendant discriminated against Plaintiff in the terms and conditions of his employment in substantial motivating part due to Plaintiff's good faith reporting and/or opposition to unlawful employment practices which violated ORS 659A.030.

52.

Plaintiff realleges his damages as stated in paragraphs 36 through 40 above.

### Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For permanent injunctive relief enjoining Defendant, its officers, employees, and agents from engaging in any harassment or discrimination or for retaliating against any employee opposing unlawful employment practices;
2. Economic damages and future losses to be determined at trial;
3. Non-economic damages to be determined at trial;
4. Punitive damages in an amount to be determined at trial;
5. Reasonable costs and attorney fees; and

///
///
///
///

6.  For such other and further relief as the Court may deem just and equitable.

DATED this 20th day of May, 2022.

                                       BAKER LAW PC

                                       *s/ Serena L. Liss*
                                       Aaron W. Baker, OSB No. 922220
                                       Serena L. Liss, OSB No. 154799
                                       Attorneys for Plaintiff